UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION
CIVIL ACTION NO. 4:26-CV-00605-GNS

RAHEL TSEGAY TEKLE PETITIONER

v.

SAMUEL OLSON, Field Office Director,
Chicago Field Office, Immigration and Customs
Enforcement, in his official capacity;
MARKWAYNE MULLIN, Secretary,
U.S. Department of Homeland Security;
in his official capacity;
TODD BLANCHE, U.S. Attorney General,
in his official capacity;
DAVID J. VENURELLA, Acting Director of
U.S. Immigration and Customs Enforcement,
in his official capacity; and
JASON WOOSLEY, Grayson County Jailer,
Grayson County Detention Center,
in his official capacity RESPONDENTS

# ORDER

This matter is before the Court on Petitioner's Petition for Writ of Habeas Corpus (DN 1).

On January 22, 2022, Petitioner Rahel Tsegay Tekle ("Telke"), a native and citizen of Eritrea, entered the United States at John F. Kennedy International Airport while applying for admission to the United States and on a nonimmigrant F1 visa. (Pet. ¶¶ 14, 20, DN 1; Resp'ts' Resp. Show Cause Order Ex. 1, at 2, DN 8-1). She subsequently filed a Form I-589 application for asylum and for withholding of removal. (Pet. Ex. C, at 2, DN 1-4). More recently, her Form I-765 application for employment authorization was approved through December 10, 2029. (Resp'ts' Resp. Show Cause Order Ex. 1, at 2).

On July 15, 2026, a Warrant for Arrest of Alien was issued for Telke. (Resp'ts' Resp. Show Cause Order Ex. 2, at 1, DN 8-2). The following day, the Immigration and Customs Enforcement ("ICE") Enforcement and Removal Operations division conducted a targeted enforcement action to detain Telke, and she was arrested at the Indianapolis International Airport. (Resp'ts' Resp. Show Cause Order Ex. 1, at 2). On July 30, 2026, a Notice to Appear was issued and served on her. (Resp'ts' Resp. Show Cause Order Ex. 3, at 1-3, DN 8-3). On August 11, 2026, an immigration judge denied her request for a custody redetermination because she is a flight risk without any providing any explanation. (Pet. Ex. G, at 2-3, DN 1-8; Resp'ts' Resp. Show Cause Order Ex. 4, at 1-2, DN 8-4). She is currently detained at the Grayson County Detention Center. (Pet. ¶¶ 6, 19).

Tekle filed the Petition for Writ of Habeas Corpus against Respondents: Samuel Olson, ICE Field Office Director for the Chicago Field Office; Markwayne Mullin, Secretary of the Department of Homeland Security; Todd Blanche, Attorney General of the United States; David J. Venturella, Acting Director of ICE; and Jason Woosley, Grayson County Jailer. (Pet. ¶¶ 15-19). In the Petition, she challenges her continued detention and alleges a violation of the Due Process Clause of the Fifth Amendment to the U.S. Constitution. (Pet. ¶¶ 68-72).

A writ of habeas corpus "may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions." 28 U.S.C. § 2241(a). Section 2241 "is an affirmative grant of power to federal courts to issue writs of habeas corpus to prisoners being held 'in violation of the Constitution or laws or treaties of the United States.'" *Rice v. White*, 660 F.3d 242, 249 (6th Cir. 2011) (quoting 28 U.S.C. § 2241(c)). In seeking habeas relief, Tekle bears the burden of proving by a preponderance of the evidence that her detention is

unlawful. *See Freeman v. Pullen*, 658 F. Supp. 3d 53, 58 (D. Conn. 2023); *Lallave v. Martinez*, 609 F. Supp. 3d 164, 171 (E.D.N.Y. 2022).

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process Clause] protects." *Zadvydas v. Davis*, 533 U.S. 678, 690 (2001) (citation omitted). The due process protections of the Fifth Amendment to all persons regardless of status, including a noncitizen. *See A.A.R.P. v. Trump*, 605 U.S. 91, 94 (2025). Even though detention pending removal is "a constitutionally valid aspect of the deportation process[,]" such detention must satisfy the requirements of due process. *Demore v. Kim*, 538 U.S. 510, 523 (2003).

Tekle asserts that the immigration judge improperly imposed the burden on her to show her eligibility for bond, and Respondents contend that the burden was properly placed on her. (Pet. ¶¶ 30-41; Resp'ts' Resp. Show Cause Order 3-17, DN 8). While the Sixth Circuit has not addressed this issue, the Court is persuaded by a sister court, which reasoned:

> "Section 1226(a) is silent as to what burden of proof applies in bond hearings and who bears that burden." *Hernandez-Lara v. Lyons*, 10 F.4th 19, 26 (1st Cir. 2021) (citing 8 U.S.C. § 1226(a)). Following the 1996 enactment of the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA), the Immigration and Naturalization Service (INS) adopted new regulations concerning the initial custody determination by the arresting officer. *See* 8 C.F.R. § 236.1(c)(2)-(8). Under those regulations, "the alien must demonstrate to the satisfaction of the officer that such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding." *Id.* § 236.1(c)(8).
>
> The new regulations concerned an initial custody decision by an officer upon arrest; however, the BIA found it reasonable to apply the standard set forth in 8 C.F.R. § 236.1(c)(8) to § 1226(a) custody redetermination hearings, placing "[t]he burden . . . on the alien to show to the satisfaction of the Immigration Judge that he or she merits release on bond." *In Re Guerra*, 24 I. & N. Dec. 37, 40 (BIA 2006). Under that standard, the government "need not show anything to justify incarceration for the pendency of removal proceedings, no matter the length of those proceedings." *Velasco Lopez v. Decker*, 978 F.3d 842, 849 (2d Cir. 2020). Neither the Supreme Court nor the Sixth Circuit has addressed whether applying

> this burden of proof at the bond redetermination hearing comports with the requirements of due process.
>
> Respondents' arguments concerning agency regulations and BIA caselaw are not persuasive in the context of the question before the Court. First, as discussed above, "the BIA lacks authority to review constitutional challenges." *See Sterkaj* [*v. Gonzales*], 439 F.3d [273,] 279 [(6th Cir. 2006)]. Second, BIA decisions imposing the burden of proof on detainees at custody redetermination hearings—*In re Guerra* and *In re Adeniji*, 22 I. & N. Dec. 1102, 1116 (BIA 1999)—did not interpret § 1226(a) as mandating the standard of proof to be applied at bond hearings. Instead, they looked to 8 C.F.R. § 236.1(c)(8), which applies to decisions by officers concerning the issuance of arrest warrants, and found it reasonable to apply the same standard to § 1226(a) bond hearings. *See* 8 C.F.R. § 236.1(c)(8) (requiring the allegedly removable noncitizen to "demonstrate to the satisfaction of the officer" that he is neither dangerous nor a flight risk in order to secure release). Third, this Court is not bound by or required to give deference to an agency interpretation of a statute. *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 413 (2024) (noting that "courts need not and under the [Administrative Procedure Act (APA)] may not defer to an agency interpretation of the law simply because a statute is ambiguous").
>
> In *Jennings v. Rodriguez*, 583 U.S. 281 (2018), "the Supreme Court held that [section] 1226(a) does not mandate that a clear and convincing evidence burden be placed on the government in bond hearings, [but] it left open the question of whether the Due Process Clause does." *Darko v. Sessions*, 342 F. Supp. 3d 429, 434-35 (S.D.N.Y. 2018). In considering the question left open by Jennings, this Court joins the majority of courts in finding that due process requires that the *government* bear the burden of justifying a noncitizen's § 1226(a) detention.

*Soto-Medina v. Lynch*, 817 F. Supp. 3d 612, 621-22 (W.D. Mich. 2026) (second, third, and fourth alterations in original) (internal footnote omitted) (footnote omitted); *see also Azalyar v. Raycraft*, 814 F. Supp. 3d 926, 935 (S.D. Ohio 2026) ("Respondents shall either (1) provide Azalyar with a bond hearing before an [immigration judge], at which the government shall bear the burden of justifying, by clear and convincing evidence of flight risk or dangerousness, Azalyar's continued detention; or (2) release Azalyar from custody, under reasonable conditions of supervision." (footnote omitted)); *Singh v. Hott*, No. 4:26-CV-256-DJH, 2026 WL 1880217, at *6 (W.D. Ky. June 30, 2026) ("Because the two grounds for the immigration judge's decision could not establish flight risk by clear and convincing evidence and the immigration judge erroneously placed the burden of proof on Singh, the bond hearing was constitutionally inadequate and violated Singh's

due-process rights." (citations omitted)); *Singh v. Noem*, No. 26-100-DLB, 2026 WL 1707611, at *3 (E.D. Ky. June 12, 2026) ("[T]his Court agrees with other district courts in the country which have concluded that the proper remedy to [a due process] violation is a constitutionally adequate bond hearing in which the government bears the burden of proof by clear and convincing evidence." (citations omitted)).

The balancing test articulated by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 319 (1976), also reflects that the government must bear the burden of proof to comport with principles of due process. Under that test, a court must consider: "(1) the private interest that will be affected by official action; (2) the risk of erroneous deprivation of that interest; and (3) the government's interest, including the fiscal and administrative burdens that the additional or substitute procedures entail." *Lopez-Campos v. Raycraft*, 797 F. Supp. 3d 771, 785 (E.D. Mich. 2025) (citing *Mathews*, 424 U.S. at 335), *aff'd*, 175 F.4th 713 (6th Cir. 2026).

The first factor weighs in favor of Tekle. She has a significant private interest in avoiding detention because one of the "most elemental of liberty interests . . . [is] being free from physical detention . . . ." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004) (citing *Foucha v. Louisiana*, 540 U.S. 71, 80 (1992)). It is also appropriate to consider whether his conditions of confinement are "indistinguishable from criminal incarceration." *Günaydin v. Trump*, 784 F. Supp. 3d 1175, 1187 (D. Minn. 2025) (citing *Hernandez-Lara*, 10 F.4th at 28; *Velasco Lopez*, 978 F.3d at 851). The detention of a noncitizen for immigration purposes results in him or her "experiencing the deprivations of incarceration, including loss of contact with friends and family, loss of income earning, . . . lack of privacy, and, most fundamentally, the lack of freedom of movement." *Id.* at 1187 (citation omitted). While this detention relates to removal, the Supreme Court "repeatedly has recognized that civil commitment for any purpose constitutes a significant deprivation of

liberty." *Addington v. Texas*, 441 U.S. 418, 427 (1979). In addition, "it is important to recognize that the deprivation of liberty that individuals detained under section 1226(a) experience is not the result of a criminal adjudication." *Alvarez Ortiz v. Freden*, 808 F. Supp. 3d 579, 599 (W.D.N.Y. 2025) (quoting *Velasco Lopez*, 978 F.3d at 851). "Unlike section 1226(c), section 1226(a) applies to a wide swath of noncitizens, many of whom . . . have no criminal record at all." *Hernandez-Lara*, 10 F.4th at 36.

The second *Mathews* factor requires the Court to consider reducing the risk of erroneous deprivation. It is true that the government has an interest in "ensuring the appearance of aliens at future immigration proceedings" and "preventing danger to the community." *Zadvydas*, 533 U.S. at 690 (internal quotation marks and alteration omitted). As the Supreme Court has noted, "[t]he choice . . . is not between imprisonment and the alien 'living at large.' It is between imprisonment and supervision under release conditions that may not be violated." *Id.* at 696 (internal citation omitted). Noncitizens who are detained during removal proceedings have no right to counsel except at their own expense and "will likely experience difficulty in gathering evidence on their own behalf[,]" which may be in part due to language barriers. *Hernandez-Lara*, 10 F.4th at 30; *Moncrieffe v. Holder*, 569 U.S. 184, 201 (2013). For a noncitizen subject to removal, it may be difficult—if not impossible—to prove the negative that he or she is not a danger risk of flight. *See Hernandez-Lara*, 10 F.4th at 31; *Elkins v. United States*, 364 U.S. 206, 218 (1960). Imposing the burden on the government is consistent with the second *Mathews* factor.

As to the last *Mathews* factor, it is a well-established and legitimate interest of the government to ensure that noncitizens neither abscond nor commit crimes. *Velasco Lopez*, 978 F.3d at 854. Nevertheless, "any detention incidental to removal must 'bear[] [a] reasonable relation to [its] purpose.'" *Hernandez v. Session*, 872 F.3d 976, 990 (9th Cir. 2017) (alterations in

original) (quoting *Zadvydas*, 533 U.S. at 690). It is also in the public interest to avoid needless detention due to its substantial social and financial costs. *See Hernandez-Lara*, 10 F.4th at 33. Therefore, this factor weighs in favor of Tekle.

For these reasons, the application of *Mathews* factors here dictate that the government bears the burden of proving by clear and convincing evidence that Tekle is a flight risk or danger to the community to justify the denial of bond, which is consistent with the cases cited above. *See Soto-Medina*, 817 F. Supp. 3d at 629.

Accordingly, **IT IS HEREBY ORDERED** as follows:

1. The Petitioner's Petition for Writ of Habeas Corpus (DN 1) is **GRANTED**.

2. Respondent shall immediately release Petitioner Rahel Tsegay Tekle. Alternatively, Respondents shall provide Petitioner with a constitutionally adequate bond hearing where the government bears the burden of proof by clear and convincing evidence under 8 U.S.C. § 1226(a) by **October 15, 2026**.

3. Respondents shall file a status report with this Court on or before **October 16, 2026**, to certify compliance with this Order. The status report shall include when the bond hearing occurred, if bond was granted or denied, and if denied, the reasons for that denial.

**Greg N. Stivers, Judge**
**United States District Court**
October 9, 2026

cc: counsel of record